George A. DARNELL, Plaintiff,

v.

**DAYTON HUDSON CORPORATION and Target Stores, Defendant.**

**IP 87–1180–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 11, 1992.

Raymond J. Haftsten, Jr., Indianapolis, IN, for plaintiff.

Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, IN, Robert L. Grossman, Grossman & Millard, Minneapolis, MN, for defendant.

## MEMORANDUM ENTRY ON ORDER GRANTING SUMMARY JUDGMENT

TINDER, District Judge.

### I. INTRODUCTION

On November 5, 1987, George A. Darnell filed suit against Defendants,[1] alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA). Darnell's complaint is based on constructive discharge, and essentially alleges that Target made his working conditions intolerable because of his age, and thereby forced him to retire involuntarily.

On March 29, 1989, Defendants filed a motion for summary judgment contending that Darnell could not prove that he was constructively discharged, could not prove a prima facie case, and could not prove that Defendants' proffered business justifications for Darnell's treatment were pretextual. After examining the parties' briefs and supporting documents, the court denied Defendants' motion, and the case proceeded toward trial.

On November 16, 1992, the court sua sponte reconsidered Target's motion for summary judgment. The court heard both parties' arguments on whether Darnell was constructively discharged from his employment and if so, whether age was a determining factor in creating intolerable working conditions for him. In an order entered concurrently with this entry, the court

---

1. On November 6, 1992, the parties submitted their "Stipulation to Dismiss Dayton Hudson Corporation Without Prejudice." Thus, Target is the sole remaining defendant in this action.

granted summary judgment in favor of Target.

## II. FACTUAL BACKGROUND

Plaintiff, George Darnell, is a citizen of the United States and resides in Hendricks County, Indiana. Darnell is in the "protected" class because he was over age 39 when he quit his employment. Defendant Target Stores (Target) operates retail stores in Indiana and throughout the United States.

Darnell became employed by L.S. Ayres, on September 17, 1946. Between 1970 and 1980, Darnell worked in the Ayr–Way division of L.S. Ayres as a manager of several of its Ayr–Way stores in the Indianapolis, Indiana area. In approximately 1976, Stevens Brothers purchased the Ayr–Way division from L.S. Ayres.

In June 1980, Ayr–Way/Stevens demoted Darnell from store manager to assistant store manager. As a result of this demotion, Darnell was transferred to Store T–129,[2] and received a pay cut.

In approximately October 1980, Dayton Hudson Corporation and Target stores acquired the Ayr–Way stores from Ayr–Way/Stevens. Upon such acquisition, Darnell retained the position he held with Ayr–Way and remained in Store T–129. His title was changed to "merchandise manager."

In June 1982, Darnell requested and received a transfer to Store T–102 as operations manager. Darnell remained at Store T–102 until it closed in October 1984 due to poor sales. When Store T–102 was closing, Darnell mentioned to district manager Richard Larson that he was considering retiring. Larson told Darnell that Target needed him, and asked him to stay. Darnell agreed to stay, and was assigned to Store T–116.

Shortly after assigning Darnell to Store T–116, Larson asked Darnell to work at Store T–112 as a temporary operations manager through the Christmas season. Darnell agreed to do so. Darnell was particularly well suited for this assignment because he had managed Store T–112 for three years under Ayr–Way.

After the Christmas season, Darnell returned briefly to Store T–116. Shortly thereafter, Larson asked Darnell to fill in at Store T–110 to help remedy problems there. In asking Darnell to take this assignment, Larson called Darnell his "relief pitcher" or "ace reliever," which Darnell considered a compliment. Darnell agreed to take the assignment at Store T–110. Prior to this assignment, Darnell requested a calculation of his retirement benefits under Target's pension program.

While assigned to Store T–110, Darnell worked under store manager, Brenda Hickman. Darnell believed that Hickman did not like him. According to Darnell, Hickman demeaned him and gave him degrading work assignments in order to force him to quit. Darnell alleges generally that Hickman made his working conditions intolerable by requiring him to work long hours, requiring him to perform menial tasks, and reprimanding him in the presence of his subordinates.

█ In late summer 1985, Darnell met with Hickman to discuss his vacation schedule. During that conversation, Hickman allegedly asked Darnell if he had considered retiring. In response, Darnell said that asking such a question was illegal,[3] and that he did not want to retire.

While working at Store T–110, Darnell complained to merchandise manager, Herb Vanderploeg (age 43), that Hickman assigned him long hours and menial tasks and treated him in a demeaning manner. Vanderploeg responded that Hickman treated him exactly the same way.

---

**2.** This store designation actually represents the store's number after Target's acquisition of Ayr–Way/Stevens.

**3.** An employer does not violate the ADEA by asking if an employee is considering retirement. *See Henn v. National Geographic Soc.,* 819 F.2d

824, 826 (7th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987) (even offering the employee early retirement does not violate the ADEA, provided the employee may decline and continue working under lawful conditions).

Until August 1985, Darnell never reported or complained of his working conditions to any Target manager with authority over Hickman, such as Richard Larson. Interestingly, Darnell claimed that he and Larson got along "beautifully," and that he spoke frequently with Larson.

In August 1985, Darnell met with Nancy Lagaard, regional personnel manager, and told her that Hickman did not like him and was trying to force him to retire. Darnell considered this discussion to be a "loose conversation" with Lagaard, and not a complaint. Lagaard encouraged Darnell not to retire, but indicated that if he chose to retire, he might be able to work as a part-time manager, filling in for managers who were off work.

On October 15, 1985, Darnell met with Larson at Store T–110. Darnell told Larson that he could not tolerate working for Hickman. Never before had Darnell voiced dissatisfaction with his working conditions to Larson. Larson remarked that he knew Darnell was unhappy working at Store T–110. He indicated that he was working on transferring Darnell, but that he could not transfer him immediately.

During this discussion, Darnell inquired about retiring and working part-time as a fill-in manager. Larson stated that Darnell would receive minimum wage for any post-retirement employment with Target. At the conclusion of his conversation with Larson, Darnell announced that he would retire.

Prior to this conversation with Larson, Darnell characterized his relationship with Larson as "always back slapping, doing a great job, shaking hands, buying you coffee. I thought everything was beautiful." Darnell's last day on the job was November 15, 1985.

On February 26, 1986, Darnell filed an age-discrimination charge with the EEOC, alleging that he had been forced to retire because of his age, in violation of the ADEA. On November 4, 1987, the EEOC issued its determination, finding no ADEA violation.

On November 15, 1987, Darnell filed his complaint, essentially alleging that he received disparate treatment and was constructively discharged from Target because his age.

Darnell bases his constructive discharge claim on allegations that Target had a "program" to force him and other "old" Ayr–Way managers to retire, and that Larson was the force behind such program. Darnell alleges that the existence of such a program is evidenced by the following circumstances:

   a. Target denied him certain job responsibilities, such as responsibility for payroll and budget;

   b. Hickman required him to work oppressive hours;

   c. Hickman treated him in a demeaning manner;

   d. Hickman gave him menial, janitorial duties;

   e. Prior to his assignment at Store T–110, he was transferred numerous times;

   f. He was unfairly passed over for participation in Target's JET[4] program for job advancement.

Each of these allegations is discussed below under the section entitled "Darnell's Burden of Proof."

### III. STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is designed to head off a trial if the opposing party does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice." *Karazanos v. Navistar Internat'l Transp. Corp.*, 948 F.2d 332, 338 (7th Cir.1991).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the movant shows by pleadings, discovery, and affidavits that there is

---

**4.** The JET Program (Job Enrichment Training) is a program in which Target selects and trains employees showing potential for advancement.

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir. 1990).

Thus, to survive summary judgment, the nonmovant must present affirmative evidence, and may not rely on conclusory allegations or speculation about what might be adduced later at trial. *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988); *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 465 n. 8 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). Furthermore, a factual dispute must be outcome determinative to preclude summary judgment. *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988).

The plaintiff must "present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

Further, in determining whether a genuine issue of material fact exists, the court must consider the substantive law of employment discrimination and the applicable burden of proof. *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 424 (7th Cir.1989). A plaintiff alleging a violation under the ADEA must prove that his employer took some adverse employment action against him based on his age and that the employer would not have taken such action but for his age. *Id.* (citation omitted).

In determining whether a genuine issue of material fact exists, the court construes all evidence in the light most favorable to the party opposing the motion for summary judgment. *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988).

"[A]t the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Thus, summary judgment is improper in an age dis-

crimination case if a decision concerning a material issue requires weighing conflicting evidence of motive and intent. *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir.1985). "The trial court [ ] cannot resolve factual disputes that could go to a jury at trial, but weak factual claims can be weeded out through summary judgment motions." *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476 (7th Cir.1988).

## IV. TARGET'S BURDEN OF PROOF

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, Target has the burden of proving that the material facts are not in dispute and that it is entitled to summary judgment as a matter of law.

However, because Darnell would have the burden of proof at trial, Target may meet its burden "by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3rd Cir.1986), *cert. denied,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant, Darnell, must then " 'set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

## V. DARNELL'S BURDEN OF PROOF

A plaintiff may prove age discrimination by either of two methods. Under the first method, the plaintiff may try to meet his burden directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge. *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 424 (7th Cir.1989) (citations omitted). Under the second method, commonly

known as the McDonnell Douglas method,[5] the plaintiff may meet his burden indirectly by using the burden-shifting method of proof. Under this method, the plaintiff must first make a prima facie case of age discrimination by showing: (1) that he was in the protected age group; (2) that he was performing to his employer's reasonable expectations; (3) that because of his age, he was given such onerous working conditions that a reasonable person in his situation would be forced to retire; and (4) that his employer sought a replacement. *Id.* at 427.

Once the plaintiff proves a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. *Id.* at 426. If the employer gives a lawful reason for the discharge, the presumption is rebutted, and the plaintiff must prove that the employer's proffered reason is a pretext for age discrimination. *Id.* at 426–27.

Darnell attempts to use the second method to prove age discrimination. Target concedes that Darnell has established the first element because Darnell was over 39 years old when he terminated his employment.

As to the second element, Target contends that Darnell was not performing to its reasonable expectations. However, Target acknowledges that Darnell consistently received satisfactory performance reviews, received no warnings, and was in no danger of losing his job. Therefore, construing all inferences in this regard in Darnell's favor, the court finds that Darnell satisfied the second element.

To prove the third element, which involves constructive discharge, Darnell must prove that Target made his working conditions so intolerable that he, as a reasonable person, was forced into a voluntary resignation or retirement. *Bartman v. Allis–Chalmers Corp.,* 799 F.2d 311 (7th Cir. 1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *Parrett v. City of Connersville,* 737 F.2d 690 (7th Cir.1984), *cert. denied,* 469 U.S. 1145, 105

S.Ct. 828, 83 L.Ed.2d 820 (1985). Further, to establish constructive discharge, Darnell must show that he was treated adversely and that younger managers were not so treated. *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1367 (7th Cir.1988).

■ The essence of Darnell's constructive discharge claim is that Target launched a "program" to make his working conditions so intolerable that he would retire. Specifically, Darnell alleges that in 1981, an outside vendor named Roy Abriani told him that he heard from store manager Tom McGill that Target had a "program" to force Darnell and two other former Ayr–Way managers (George Staton and Herb Vanderploeg) to retire. Interestingly, Herb Vanderploeg remains in Target's employ, and in fact has received a promotion to store manager since 1981. Darnell also claims that in 1981, he overheard the manager of Store T–102, Bill Rihel, ask another employee for a list of employees over age 55. Darnell contends that these statements evidence the existence of a program to force him and other older employees to retire. Darnell additionally claims that Hickman's asking him if he had thought about retiring is further evidence of a program.

Such statements are hearsay, and thus inadmissible at trial. Further, Darnell does not complain that his working conditions were intolerable at the stores managed by McGill or Rihel, *i.e.,* prior to his assignment to Store T–110, working under Hickman.

Even if these statements were admissible, Darnell failed to prove a causal connection between the statements and age discrimination. *Washburne v. Potter & Brumfield,* 41 EPD ¶ 36,650, 1986 WL 15510 (S.D.Ind.1986); *Harrell v. Potter & Brumfield,* 41 EPD ¶ 36,515, 1986 WL 459 (S.D.Ind.1986).

During the period that the program allegedly was in effect, Darnell received no discipline, demotion, or reduction in pay. In fact he received regular raises, and his performance reviews were satisfactory. Moreover, on at least two occasions, Dar-

---

**5.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

nell was encouraged *not* to retire: in 1984 when Store T–102 closed, and in the fall of 1985 shortly before deciding to retire.

*Payroll*

■ As further evidence of a program geared toward forcing him to retire, Darnell alleges that he was deprived of certain job responsibilities, specifically payroll and budget responsibilities. Target's operations managers typically are responsible for payroll. When Darnell transferred to Store T–110, he initially had responsibility for payroll. Subsequently, however, Hickman took this responsibility from Darnell. Darnell maintains that being deprived of payroll responsibility is evidence of age discrimination.

However, Darnell testified in his deposition that Target deprived him of these functions because he "knew too much" and questioned the fairness of the allotment of employees' hours. Further, Darnell testified that he strongly disagreed with the way Hickman did the payroll.

Target showed that Darnell was inaccurate, could not control the numbers, and overspent the budget. Darnell did not rebut Target's contention that he could not perform his budget and payroll responsibilities adequately. Notably, Darnell acknowledged that Ayr–Way, Target's predecessor, also took those functions away from him. Moreover, Darnell failed to show that Target refused to allow him to do payroll because of his age.

■ Darnell attempted to support his position with the fact that Target never advised him that he did not perform the payroll function satisfactorily. However, the law does not require employers to convey their dissatisfaction with job performance to employees. *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3rd Cir.1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).

Darnell failed to show that his being deprived of payroll functions was in any way related to his age. Target, on the other hand, submitted evidence showing that it had legitimate business reasons for taking the payroll responsibility from Dar-

nell. Thus, Darnell failed to establish the existence of a genuine issue of material fact regarding his being deprived of payroll and budget responsibilities.

*Work Hours*

■ In further support of his allegation concerning a program, Darnell claims that his hours were longer and less convenient than those of younger merchandise or operations managers. However, Darnell testified at his deposition that he did not know how many hours other merchandise or operations managers worked. Further, he admitted that he volunteered to work extra hours. Additionally, Darnell did not keep a log of the hours he worked, and thus submitted no evidence concerning them.

On the other hand, Target submitted evidence that it requires exempt managers at all levels to work approximately 55 hours per week, and that during the holiday season, they work an average of 70 hours per week. Furthermore, Cathy Martin testified that she too was required to work oppressive hours, and that she worked an average of 60 hours per week—often working 10 to 12–hour days. In fact, the heavy work schedule was one of the main reasons Martin quit working for Target. Martin was 33 years old at the time.

To show that a factual dispute exists regarding whether his work schedule was comparable to younger managers, Darnell must bring more than vague allegations and speculation. He must submit specific factual examples demonstrating that younger managers received preferential treatment. *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1367 (7th Cir.1988). Darnell failed to make such a showing.

Thus, Darnell failed to prove that a genuine issue exists for trial regarding disparate treatment arising from his work schedule.

*Demeaning Treatment by Hickman*

■ Darnell claims that Hickman treated him in a demeaning way in order to force him to retire. Darnell cites several examples of such demeaning treatment, such as Hickman's treating him like a juve-

nile and reprimanding him in front of subordinates.

However, the evidence presented does not support Darnell's contention that Hickman treated him disparately. Indeed, Darnell's own witness, Cathy Martin, testified that Hickman was critical and demeaning of *all* employees, including Vanderploeg and her. Martin further testified that Hickman was very "demanding and overbearing toward everyone, including myself and including George."

Target concedes that Hickman's performance as a store manager was only satisfactory, and that she was very demanding and often condescending and overly critical of her employees. However, Target showed that Hickman treated employees harshly regardless of their age. Furthermore, Hickman gave Darnell a good six-month evaluation. Indeed, it was among the best evaluations he received as a Target employee.

Thus, Darnell failed to show the existence of a genuine issue regarding his allegation that Hickman treated him disparately.

### Menial Tasks

■ Darnell submitted a laundry list of tasks that he considered demeaning, and claimed that no other manager was required to perform such tasks, and that Target assigned them to him them so that he would quit. Examples of these menial tasks include Darnell being instructed to remove carts from the parking lot, remove a bird nest from the Target sign, and remove trash from bushes. However, manager Cathy Martin testified that she too was required to perform menial tasks. Martin was 33 years old when she worked for Target. Martin considered these menial tasks to be a significant reason for her quitting Target after only six months. Vanderploeg switched from operations manager to merchandise manager shortly before Darnell transferred to his store, perhaps to be relieved of the menial maintenance tasks associated with the operations manager position.

Operations managers, including Darnell, were in charge of store appearance and maintenance. Thus, although Darnell considered many of his tasks to be menial, they were nonetheless related to store appearance and maintenance, and thus were his responsibility. Darnell failed to explain why he did not delegate these menial tasks to his subordinates, other than to say that he had no full-time maintenance crew because Hickman had replaced it with an after-hours maintenance contractor.

Thus, Darnell failed to establish that he was assigned menial tasks because of his age, and that he was given such tasks in an effort to force him to retire.

Darnell asserts that unlike younger managers, he was required to reorganize stockrooms. However, Darnell submitted no evidence to substantiate his assertion. Conversely, Target submitted testimony that all operations managers were required to reorganize stockrooms, including the younger operations manager who replaced Darnell.

### Transfers

■ Darnell alleges that due to his age, he was moved from store to store, instead of being permanently assigned to one store. He claims that his frequent transfers were part of Target's "program" to force him to retire. However, the evidence shows that with the exception of briefly working at Store T–116 between assignments, Darnell was assigned to two stores for four out of the five years he worked for Target.

Moreover, Darnell failed to show that he was transferred more frequently than younger managers or that he was transferred because of his age. Darnell failed to name any younger managers who were transferred less frequently. Conversely, Target submitted evidence showing that Darnell was transferred due to legitimate business reasons, and not age discrimination. Darnell did not attack Target's reasons for his transfers. Thus, Darnell presented no evidence showing that he was transferred for discriminatory reasons.

### The JET Program

■ As further evidence of a program to force him to retire, Darnell asserts that

he was excluded from Target's JET Program because of his age. Darnell received an "S+" rating in 1981,[6] which he claims made him eligible for Target's JET Program. However, to be eligible for the JET Program, Target employees must *consistently* maintain a minimum performance rating of 64 points. Although Darnell may have received an S+ rating in 1981, his point scores over the years consistently ranged between 55 and 59 points. Darnell acknowledged that his performance was always satisfactory, but not exceptional. Darnell did not consistently have a performance rating of 64, and therefore was not eligible for the JET Program. Thus, Darnell failed to show the existence of a genuine issue of fact regarding his exclusion from the JET Program.

Darnell offered no admissible evidence showing that Target had a "program" to force him to retire. He simply assumed such a program existed because he did not like his work assignments. Speculation, conjecture, and assumption are insufficient to withstand summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). General feelings that an employer took certain actions to force an older employee to quit are ineffective under Rule 56 to create a genuine issue of material fact. *Wehrly v. American Motor Sales Corp.*, 678 F.Supp. 1366, 1372 n. 6 (N.D.Ind.1988).

Thus, even construing all reasonable inferences from the record in Darnell's favor, Darnell failed to show that Target had a program to discriminate against him because of his age.

*Inconsistencies Between Affidavits and Depositions*

In response to Target's summary judgment motion, Darnell submitted the affidavits of himself, Barbara Sisler, and Cathy Martin. These affidavits were replete with hearsay and speculation.[7] When asked at deposition to clarify their affidavits, the affiants continually either contradicted the affidavit statements, seemed confused about the contents of their affidavits, or otherwise failed to support the statements made in the affidavits. The allegations made in the affidavits were very forceful, and if supported by deposition testimony or other admissible evidence likely would have prevented the court from granting summary judgment in favor of Target.

Sisler, Martin, and Darnell capitulated on their affidavit statements when cross-examined in deposition, even though plaintiff counsel had an opportunity to rehabilitate them. Deposition testimony should be accorded more credence than an affidavit because a deposition setting provides opportunity for cross-examination. *In re Norsom Med. Reference Lab*, 41 B.R. 846, 848 (Bankr.N.D.Ill.1984). The Seventh Circuit has held that parties may not defeat summary judgment by making conclusory allegations that conflict with admissions in their deposition testimony. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir.1985). Further, a plaintiff may not change his testimony to create a factual dispute in order to defeat a summary judgment motion. *Id.*

## VI. CONCLUSION

Darnell submitted no evidence showing that any of his allegations of disparate treatment were motivated by his age. He failed to prove a prima facie case of age discrimination. Specifically, Darnell failed to prove that because of his age, Target made his working conditions so intolerable that he was forced to retire. Summary judgment is appropriate against a party who fails to show the existence of an element essential to his case, and on which he will bear the burden of proof at trial. *Don-*

---

**6.** Darnell's numerical score on his 1981 performance review is in the "satisfactory" range. However, S+ was circled, then crossed out. Whether Darnell received an S or an S+ is irrelevant to the issue of whether he was deprived of participation in the JET Program due to his age because he did not meet the requirement of consistently maintaining at least a 64 on his performance reviews.

**7.** Of further annoyance to the court is the fact that Darnell's reply brief fails to cite any admissible evidence or testimony.

**1380**

*ald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988).

### JUDGMENT GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons discussed in an accompanying Entry, the court ORDERS that:

(1) The Motion for Summary Judgment filed by Defendant Target Stores (Target) is GRANTED;

(2) Judgment is entered in favor of Target and against Plaintiff George A. Darnell; Darnell shall recover nothing against Target;

(3) This Order resolves all issues presented in the Complaint. Therefore, the Clerk is ordered to close the file.

ALL OF WHICH IS ORDERED.