Kenneth L. **ZOLLMAN**, Plaintiff-Appellee,

v.

**SYMINGTON WAYNE CORPORATION**, a Corporation; and Globe Hoist Company, a Corporation, Defendants-Appellants.

Howard F. **LEISURE**, Plaintiff-Appellee,

v.

**SYMINGTON WAYNE CORPORATION**, a Corporation; and Globe Hoist Company, a Corporation, Defendants-Appellants.

No. 17991.

United States Court of Appeals, Seventh Circuit.

Feb. 9, 1971.

Rehearing Denied Feb. 25, 1971.

James J. Stewart, Terence L. Eads, Indianapolis, Ind., for defendants-appellants; Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Ind., of counsel.

Joseph A. Noel, Floyd F. Cook, Kokomo, Ind., for plaintiffs-appellees; Cook & Cook, Noel, Noel & Williams, Kokomo, Ind., of counsel.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and KERNER, Circuit Judge.

SWYGERT, Chief Judge.

This is an appeal in a diversity action in which the plaintiffs, Kenneth L. Zollman and Howard F. Leisure, were awarded damages for personal injuries against Symington Wayne Corporation and Globe Hoist Company, a division of Symington Wayne. The suit arose out of an accident in Kokomo, Indiana, on September 25, 1965 in the B & Z Muffler Shop owned and operated by plaintiff Zollman.

Both plaintiffs were seriously injured when a car fell from a hoist manufactured by Globe. The plaintiffs, alleging strict liability and negligence, proceeded on the theory that the hoist was defective in design. The jury denied recovery on strict liability, but found the defendants guilty of negligence. Defendants appeal from the denial of their motions for a directed verdict and for judgment notwithstanding the verdict. The basic issue, whether there was substantial evidence to prove that any defect in the hoist proximately caused the accident, raises questions which necessitate a detailed statement of the facts.

The hoist in question has a rectangular frame made of I-beams, with upright posts at each corner. On top of the lat-

eral I-beams are inverted V-rails which support a front and rear crossbar. These crossbars have rollers at each end which permit the bars to roll along the length of the V-rails. The crossbars are equipped with hinged jacks. The following is a schematic illustration of the hoist.

[A36647]

To operate the hoist a mechanic drives the car over the back I-beam and crossbar by means of removable ramps. The entire car is centered inside the rectangular frame which rests on the floor. The operator then rolls the rear crossbar under the rear of the car and attaches the jacks to the car's frame. He positions the front crossbar between the front wheels and bumper. Whether the proper use of the front crossbar includes attaching the jacks is a much-disputed point.

The operator then activates the electric hoist which uses cables at each corner to lift the entire rectangular frame and the car with it. The crossbars and jacks are the only points of contact with the frame of the car. When the car is up the wheels hang free, and the entire undercarriage of the car is exposed for motor, transmission, and muffler work.

On the day of the accident Zollman raised a 1961 Pontiac on the hoist in order to replace the exhaust pipe and muffler. He then lowered the car and started the motor to test the exhaust. Hearing a leak, he again raised the car and proceeded to install a new gasket. As Zollman was about to complete the repairs, a customer, Howard Leisure, walked into the shop. Leisure stepped under the Pontiac to ask Zollman about a bill. At that moment, the front end of

the car fell from the hoist, pinning the two men under it.

Plaintiffs' case is based almost entirely on Zollman's testimony about his operation of the hoist. He said that before the second lift he checked the position of the front crossbar and pressed it back against the front tires. He did not use the front jacks. Plaintiffs also presented expert testimony and videotapes based on tests of the hoist. These witnesses described how a front crossbar, positioned against the front tires, would slide forward a few inches as the car was lifted. Their explanation was that the car frame, which rests on the crossbar, slopes downward from the tires forward to the radiator bolt. It is plaintiffs' theory that, because the front crossbar slides a few inches forward when the car is lifted, it is possible that the bar somehow "jumped out" from under the frame and allowed the car to drop. This theory, however, was never substantiated by any of the numerous tests performed by the expert witnesses. In no test were experts for either party able to dislodge the front crossbar from its final position against the radiator bolt. Various assaults on the raised car, from men shoving and rocking it to a hydraulic jack exerting hundreds of pounds of pressure, produced only one type of movement: the entire car would roll along the lateral I-beams but would not fall off the hoist.

Defendants made a direct attack on the credibility of Zollman's testimony. The evidence was clear and undisputed that if the crossbar was pushed against the front tires, as Zollman stated, there was no way, proven or hypothetical, for the car to fall off the hoist. Defendants' experts testified that the weight of the car on the crossbar, plus the bulk of the radiator bolt, combined to "lock" the crossbar behind the bolt. The possibility that the crossbar could have sheared off the bolt was contradicted by testimony that the radiator bolt, indeed the entire undercarriage of the car, was not damaged in the accident.

Defendants' explanation of the accident is based on the tests in which the car did fall from the hoist. In each test, the car was lifted with the front crossbar positioned under the front edge of the bumper. The car could be lifted to the top of the hoist in this manner, but a small amount of pressure on the front of the car would cause it to slide off the bar and fall to the ground.

Zollman testified he did not believe it was possible to lift a car with the bumper resting on the crossbar, but admitted that such a lift would be an obvious and dangerous misuse of the hoist. Defendants argue that Zollman must have inadvertently lifted the car with the front of the bumper on the crossbar; otherwise, there is no explanation for the accident.

The principal reason advanced by the defendants for a reversal is grounded on the proposition that unsupported evidence which is contrary to the physical facts and scientific principle has no probative value. Defendants argue that Zollman's testimony about positioning the front crossbar against the tires was not entitled to belief by the jury because it contradicted all the physical demonstrations that the crossbar would not slide out from such a position and that the Pontiac could not have fallen from the hoist under such circumstances. Further, since plaintiffs' case depends on the validity of Zollman's testimony, the trial judge erred in denying defendants' motion for a directed verdict.

We agree. A review of the decisions in Indiana as well as in other jurisdictions convinces us that this is a proper case for application of the "physical facts" rule and that that rule requires discounting Zollman's testimony. The Appellate Court of Indiana has stated the "physical facts" rule as follows:

It is well settled in this jurisdiction and elsewhere that the testimony of a witness which is opposed to the laws of nature, or which is clearly in conflict with principles established by the laws of science, is of no probative val-

**32**

ue and a jury is not permitted to rest its verdict thereon. * * * This rule is frequently applied to the testimony of one who says he looked but did not see an object, which, if he had looked, in the very nature of things, he must have seen. Connor v. Jones, 115 Ind.App. 660, 669–670, 59 N.E.2d 577, 581, 60 N.E.2d 534 (1945) (citations omitted).

Other courts have held likewise. In Atlantic Coast Line R. R. v. Collins, 235 F.2d 805 (4th Cir. 1956), the appellate court reversed a judgment for plaintiff and directed a judgment for the defendant. The plaintiff, a railroad employee, testified he wrenched his back trying to operate a switch which he said was very difficult to move. The court held his testimony could not be credited in the face of evidence that the plaintiff had moved the switch many times the same night, and that other employees moved it easily after the injury. Similarly, a Louisiana district court refused to credit a plaintiff's account of an accident because the winch system was shown to be hydraulic, not electric as plaintiff's witnesses claimed. Grant v. Cia Anonima Venezolana de Navegacion, 228 F.Supp. 232 (E.D.La.1964).

Most courts which refuse to apply the "physical facts" rule are faced with many variable factors about which no precise testimony could be given. Often these are automobile-accident cases, in which an expert's reconstruction of the "physical facts" of the accident is necessarily based on inaccurate estimates of speed, periods of time, and distances. For examples, see Baltimore & O. R. R. Co. v. Daugherty, 123 Ind.App. 373, 111 N.E.2d 483 (1953); Granat v. Schoepski, 272 F.2d 814 (9th Cir. 1959); Kansas City Public Service Co. v. Shephard, 184 F.2d 945 (10th Cir. 1950), and Jarman v. Philadelphia-Detroit Lines, 131 F.2d 728 (4th Cir. 1942).

■ In the present case, however, there are no such variables to diminish the persuasiveness of the physical facts. Plaintiffs and defendants performed numerous tests with the same or an identical car hoist and with the same or similar Pontiacs. The only variable which produced different results was the position of the front crossbar. When placed under the front edge of the bumper, the crossbar slid out with minimal pressure. When placed between the tires and the radiator bolt, the crossbar could not be dislodged. The inescapable conclusion is that Zollman's misuse of the hoist, rather than defective or negligent design of the hoist, caused the accident.

■ Plaintiffs suggest that defendants were negligent not to provide an instruction that the front jacks should always be used. Defendants admit that use of the front jacks provides a safer lift. But failure to use the jacks did not contribute to the accident, since Zollman must have lifted the automobile in what he acknowledged would be a dangerous manner. A manufacturer has no duty to warn against obvious misuses of a product under Indiana law. Posey v. Clark Equipment Co., 409 F.2d 560 (7th Cir. 1969). Defendants' motion for judgment notwithstanding the verdict should have been granted.

The judgment of the district court is reversed, and the case is remanded to the district court with directions to enter judgment for the defendants.