JAMES KNIGHT *v.* HAROLD BAKER AND AURORA CASKET CO.

[No. 1-876A138.  Filed June 13, 1977.]

*Harry L. Zerbe,* of Lawrenceburg, *William R. Pfister,* of Lawrenceburg, *R. Davy Eaglesfield,* of Indianapolis, for appellant.

*Douglas R. Denmure,* of Aurora, *John A. Lloyd, Jr., Susan G. Faller, Frost & Jacobs,* of Cincinnati, Ohio, for appellees.

LYBROOK, J.—Following the granting of a Motion for Directed Verdict for the defendants in a defamation action brought by Knight against them, Knight appeals.

The record indicates that Knight had been an employee of Aurora Casket Co. for twenty years. He worked in the capacity of a metal buffer and was paid on an incentive basis. Each step of the casket production process was performed by a separate crew. Knight was a member of a three man crew of buffers. Each casket had several operations performed on it and each operation was represented by a coded I.B.M. card. When each step was concluded the man doing the work removed the I.B.M. card representing his job and stored the card to be turned in the following day. The employees were paid by the number of cards which they collected during the week.

For some time there had been cards missing from the caskets and there were numerous complaints and turmoil in regard to the missing work credit cards. It was Knight who divided the cards among the other buffers and welders. Knight also transported the cards to the foreman for forwarding to the data processing center.

In late June 1970, considerable trouble developed in the metal department regarding the missing tickets. Evidence was produced that the employees were unhappy about the tickets and were accusing one another of theft. Defendant Harold Baker, the plant superintendent, had received complaints from one employee specifically accusing another employee of the thefts.

In July 1970, at Baker's request, the data processing supervisor reviewed the tickets and informed the corporation's president Barrott that Knight had turned in cards which did not represent the operation he performed for the company.

Following this discovery Baker met with the employees and informed them that anyone caught with another's cards would be discharged on the spot.

After additional reports of missing tickets, a further check was made at Barrott's direction and an additional ticket was found in Knight's card packet which did not belong to his operation. Barrott informed Baker of the discovery and instructed him to terminate Knight.

Baker informed Knight of his termination in the presence of acting foreman Vastine and assistant plant manager Henke. Evidence was also presented which indicated Baker had told John Pickett, co-worker of Knight, that they had gotten the person taking the tickets. An additional co-worker, Clyde Hopping, was told by Baker that Hopping's missing tickets had been found in Knight's packet and he had been terminated.

Baker filed the appropriate form with the Indiana Employment Security Division on the same day he terminated Knight. This form included a statement which said Knight had been "Discharged for misconduct in connection with his work." Later, Baker was requested by the Employment Security Division to clarify his previous statement. Baker gave oral information to Miss Harrell of the Employment Security Division to the effect that Knight had been cheating on his work by taking tickets belonging to other employees.

At the end of plaintiff's case, the defendant filed a Motion to Dismiss or in the alternative a Motion for a Directed Verdict. The trial court denied the Motion to Dismiss but granted the Motion for Directed Verdict.

The following issues are presented for our review:

(1) Was the granting of the Motion for Directed Verdict reversible error?

(2) Where the statements made by Baker within the qualified privilege shielding those with a common interest?

## I. & II.

In light of the relationship between the two issues, they will be discussed together.

The standard of review to be applied to appeals from Directed Verdicts was summarized by this court in *Montgomery Ward & Co., Inc.* v. *Tackett* (1975), 163 Ind. App. 211, 323 N.E.2d 242 where it stated:

"Review of rulings on motions governed by Ind. Rules of Procedure, Trial Rule 50, is subject to the standard found in *Jones* v. *Indianapolis Power & Light Co.* (1974), [158] Ind. App. [676], 304 N.E.2d 337, quoting from *Mamula* v. *Ford Motor Company* (1971), [150] Ind. App. [179], 275 N.E.2d 849:

" 'On appeal we will consider only the evidence most favorable to the party against whom the Motion for Directed Verdict was made and all reasonable inferences from such evidence. (Citations omitted.)'

"The quantum of evidence necessary for a plaintiff to avoid a directed verdict at the close of his evidence has been determined by our Supreme Court to *be any evidence or legitimate inference therefrom tending to support at least one of the plaintiff's allegations.* Specifically, our Supreme Court held in *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 623, 230 N.E.2d 315, 318, that:

" 'It is only where there is *a total absence of evidence* or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the court may give a peremptory instruction * * *' ".

With these standards in mind we review the situation in the case at bar.

The basic disagreement between the parties' theories of the case centers around the qualified privilege which can be asserted as a defense in a defamation action. The qualified privilege in the case at bar is based on the "common interest" of the plaintiff and defendant and the other employees to whom the alleged defamatory statements were published. The recent case of *Weenig* v. *Wood*

(1976), 169 Ind. App. 413, 349 N.E.2d 235 aptly describes the privilege in the following manner:

"The rule of qualified privilege upon which *Weenig* relies has long been recognized in Indiana. In *Indianapolis Horse Patrol, Inc.* v. *Ward* (1966), 247 Ind. 519, 524, 217 N.E.2d 626, 628-29, the court held that:

The rule is well stated in 18 I.L.E. Libel and Slander § 52, pp. 475-476, as follows:

'The rule concerning a qualified privilege is that a communication made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty, is privileged.'

"This rule of privilege encompasses what is sometimes called the 'Common Interest' privilege, and the privilege which exists for the 'protection of Interest of Recipient or a Third Person'. Restatement of Torts §§ 595, 596, *supra;;* Prosser, *supra,* at 789; 1 Harper & James, *supra,* at 441-442. The privilege has been recognized in the earliest of applicable Indiana cases, *Coombs* v. *Rose* (1846), 8 Blackf. 155, and discussed at length by our courts on numerous occasions. *See, e.g., Gibson* v. *Kincaid* (1966), 140 Ind. App. 186, 221 N.E.2d 834; *Cadle* v. *McIntosh* (1912), 51 Ind. App. 365, 99 N.E. 779."

It is equally well established that the qualified privilege may be overcome by a showing of "malice" on the part of the defendant. The *Weenig* case discussed the malice exception in the following manner:

"The general rule is that 'actual' or 'express malice' must be shown by the plaintiff to defeat a claim of qualified privilege. *Coombs* v. *Rose, supra,* 8 Blackf. at 157.

'Actual malice' is often spoken of in terms of ". . . motives of personal spite or ill will," *Henry* v. *Moberly, supra,* 6 Ind. App. at 495, 33 N.E. at 983, quoting *Klinck* v. *Colby,* 46 N.Y. 427, 7 Am. Rep. 360, or ". . . 'an evil and malignant desire to degrade and injure,' " *Kleizer* v. *Symmes, supra,* 40 Ind. at 571, quoting *Dial* v. *Holter,* 6 Ohio St. 228. But the essence of the concept is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which the privilege exists. As stated by the court in *Henry* v. *Moberly, supra,* 6 Ind. App. at 497, 33 N.E. at 983:

" 'The word 'malicious' 'Denotes merely the absence of lawful excuse; in fact, to say that defamatory words are malicious in that sense, means that they are unprivileged; not employed under circumstances which excuse them.' (Emphasis supplied).' "

Once the defense of qualified privilege has arisen, its application to a particular situation is to be decided by the court as a matter of law. *Henry* v. *Moberly* (1893), 6 Ind. App. 490, 33 N.E. 981; *Henderson* v. *Evansville Press, Inc.* (1957), 127 Ind. App. 592, 142 NE.2d 920.

It is clear from the record that the communications by Baker were *prima facie* within the qualified privilege as all the employees had a pecuniarily common interest in the operation of the metal buffing department of Aurora Casket Co. In addition, the overall atmosphere and relationship among the employees was of prime concern to Baker and Barrott. They were under a duty to clarify any of the employees' misconceptions within the realm of their mutual interests.

The only communication which can be seriously argued not to be within the privilege is the information sent to the Indiana Employment Security Division. As was stated above, the original communication to the agency was quite brief and non-committal. It was only at the agency's request that Baker expanded upon the reasons for dismissal. This court has previously been faced with a similar question of the privileged nature of an employer's communication to the Indiana Employment Security Division. The case of *Sanders* v. *Stewart* (1973), 157 Ind. App. 74, 298 N.E.2d 509 firmly held that such communications are qualifiedly privileged. Therefore, all the alleged defamatory communications were qualifiedly privileged and were held to be so as a matter of law. *Henry, supra; Henderson, supra.*

Once the communications are held to be qualifiedly privileged, the plaintiff then has the burden of overcoming that

privilege by a showing of "malice". As was stated in Prosser, *Law of Torts* § 115, at 796 (4th ed. 1971) :

"Once the existence of the privilege is established, the burden is upon the plaintiff to prove that it has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said. Unless only one conclusion can be drawn from the evidence, the determination of the question whether the privilege has been abused is for the jury."

Prosser has enumerated the following as abuses sufficient to overcome the qualified privilege :

(1)   The defendant steps outside the scope of the privilege or abuses the occasion.

(2)   The defendant publishes the defamation in the wrong state of mind (courts will look to the primary motive of the publication).

(3)   The defendant does not believe, or have reasonable grounds to believe, or "probable cause" to believe the truth of the statements he is making.

If any evidence had been presented by Knight on any of the above exceptions, the Motion for Directed Verdict should not have been granted. *Montgomery Ward, supra.*

Appellant directs this court's attention toward two separate items of evidence in an attempt to show the "malice" required to overcome the qualified privilege.

Initially Knight contends that Baker and the rest of Aurora's management harbored ill will and spite against him because of his efforts in 1962 to establish a union at the Aurora plant. Knight merely asserted these accusations in his testimony and was unable to produce any reasonable evidence to show the supposed ill will. Even if any reasonable evidence existed on this point, the qualified privilege may not be overcome. As Prosser, *supra,* stated at pages 794-795 :

"On the other hand, it may mean something less than spite, ill will, or a desire to do harm for its own sake; and, while there is authority to the contrary, it is the better and perhaps more generally accepted view that the mere

existence of such ill will does not necessarily defeat the privilege. 'Malice' in this sense may subject the defendant to punitive damages if he is liable at all; but if the privilege is otherwise established by the occasion and a proper purpose, the addition of the fact that the defendant feels indignation and resentment toward the plaintiff and enjoys defaming him will not always forfeit it. Perhaps the statement which best fits the decided cases is that the court will look to the primary motive or purpose by which the defendant apparently is inspired. Discarding 'malice' as a meaningless and quite unsatisfactory term, it appears that the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection. If the defendant acts chiefly from motives of ill will, he will certainly be liable; and the vehemence of his language may be evidence against him in this respect."

It is clear that all persons receiving the publication had a common interest in the Aurora operation and the explanation of the missing cards.

Knight next charges that Baker stated he did not know if Knight had taken the missing tickets and thus came within exception (3) above. We cannot agree. The uncontroverted evidence reveals that Baker received his information from Barrott and was therefore justified in relying on the reports by the company president. He therefore was not without reasonable grounds or probable cause to believe the truth of his statements.

We are unable to find any reasonable evidence upon which reasonable men could differ in regard to the overcoming of the qualified privilege under which Baker acted. The trial court thus properly ordered the jury to return a verdict for the defendants. *Montgomery Ward, supra.*

The judgment of the trial court is therefore affirmed.

Affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 363 N.E.2d 1048.