**Wayne RUSSELL, Plaintiff**

v.

**KEYES FIBRE CO., Ken Orze, Individually and as Agent of Keyes Fibre, and Frank Gavrilos, Individually and as Agent of Keyes Fibre, Defendants.**

**No. H 90–127.**

United States District Court, N.D. Indiana, Hammond Division.

Feb. 5, 1991.

---

3. *See* Smith, "State's Prisons Test the Limit,"  *Chicago Tribune,* March 31, 1991, at 13.

Charles R. Deible, Hammond, Ind., Rosalie B. Levinson and Donald P. Levinson, Merrillville, Ind., for plaintiff.

James E. McHie, McHie, Myers, McHie & Enslen, Hammond, Ind., Richard E. Lieberman, Carol L. O'Brien, James A. Burns, Jr. Ross & Hardies, Chicago, Ill., for defendants.

## ORDER

MOODY, District Judge.

This action is again before the court on the defendant's "Motion for Summary Judgment," filed with a supporting brief, statement of material facts, proposed conclusions of law, and a proposed summary judgment on November 30, 1990. This court explained the factual, jurisdictional, procedural, and substantive law background of this motion in an order of January 11, 1991 ("January 11 order"). The court's January 11 order granted summary judgment with respect to one of plaintiff's claims, which alleged breach of contract under Indiana law. However, the court took the motion under advisement with respect to plaintiff's remaining (1) federal question claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621–34 (1985 & Supp.1990), and (2) defamation claim under Indiana law.

For the reasons discussed below, the court now DENIES SUMMARY JUDGMENT as to the remaining claims.

## I. BACKGROUND

The January 11 order set forth the factual background of this action:

The undisputed facts show that plaintiff worked as an hourly employee for defendant Keyes Fibre Co. from 1950 to 1965, and as a production shift supervisor from 1965 to 1989. In July of 1989, plaintiff transferred to the newly created position of training coordinator, serving in that position until his termination in October of 1989. At relevant times, defendant Frank Gavrilos was the overall production manager at Keyes Fibre, and defendant Ken Orze was the overall plant manager.

In October of 1989, when plaintiff was 57 years old, Gavrilos informed Orze about an incident in which Gavrilos found plaintiff and others loading plaintiff's company-owned desk into plaintiff's personal vehicle. Soon thereafter, Orze fired plaintiff, asserting the desk incident as cause. Keyes Fibre has never replaced the plaintiff, nor has it sought a replacement.

Plaintiff subsequently applied for unemployment benefits from the State of Indiana, which resulted in an inquiry by the state into the reasons for his termination. In the Indiana unemployment proceedings, agents of Keyes Fibre stated that the company's reason for firing plaintiff was attempted theft of company property.

This court took the defendant's motion for summary judgment under advisement because a discovery dispute erupted late in the case. The court's January 11 order resolved that dispute and reopened discovery for the limited purpose of allowing plaintiff to depose one Robert Dare, a former employee of defendant Keyes Fibre. The January 11 order recognized that it would be improper to rule on the defendant's motion until the plaintiff had an opportunity to present exhibits in opposition to the motion for summary judgment, which might arise from the deposition of Mr. Dare.

On January 22, 1991, the plaintiff filed his "Supplement to Plaintiff's Response to Defendants' Motion for Summary Judgment." With this filing, plaintiff has submitted, *inter alia*, an affidavit of Mr. Dare.[1] The defendants then responded with a "Supplemental Brief in Support of Summary Judgment," filed January 25, 1991. Plaintiff replied with a "Response to Defendants' Supplemental Brief in Support of Summary Judgment," filed January 29, 1991. Seeking the last word, as is contemplated by Local Rule 9, the moving defendants replied with yet another brief on January 30, 1991, styled "Defendants' Reply to Plaintiff's Response to Defendants' Supplemental Summary Judgment Brief." In light of these filings, together with the procedures and substantive law discussed in the court's January 11 order, the court turns now to the remaining merits of the defendants' summary judgment motion.

## II. CLAIM UNDER THE ADEA

The January 11 order carries the court almost to the end of its ADEA analysis.

[P]laintiff's ADEA claim turns on his ability to present either direct evidence of discrimination or indirect proof through a burden shifting analysis. It appears from plaintiff's response to the defendants' summary judgment motion that he has no direct evidence of discrimination. Therefore, plaintiff must rely on burden shifting. Under the burden shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), as applied to the ADEA in such cases as *Weihaupt v. American Medical Ass'n*, 874 F.2d 419,

---

1. Plaintiff also violated an express provision of the court's January 11 order by submitting two affidavits from other persons, which did not arise from the additional discovery, but which were simply omitted from the plaintiff's original response. Plaintiff's counsel urges the court to consider these omitted affidavits in ruling on the motion for summary judgment, blaming his secretary for both (1) failing to append them to his original response, and (2) failing to rewrite his brief to refer to them. Plaintiff's counsel states that he never discovered his omissions until after the court's January 11 order.

On the eve of trial, the court refuses to consider these untimely affidavits.

427 (7th Cir.1989), the plaintiff must first show facts establishing a *prima facie* case sufficient to call for evidence from a defendant. In most cases, plaintiff "must establish that: (1) he was in the protected class (age 40 or older); (2) his job performance met his employers' legitimate expectations; (3) he was discharged or demoted; and (4) the employer sought a replacement for him." *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 427 (7th Cir.1989). [footnote: The court notes some confusion in this circuit concerning the replacement prong. Some case law suggests that the replacement must be a younger person; other case law suggests the replacement may be any person. *See Weihaupt,* at 874 F.2d 427 n. 2.]

■ In a case like this, however, where the defendant employer never sought a replacement, and where the job was newly created especially for the plaintiff only a few months before termination, this court will carefully scrutinize the replacement element of the *prima facie* case. As the Seventh Circuit has explained, "[T]he facts in any employment discrimination case will vary so that the proof required to make a *prima facie* showing in one case 'is not necessarily applicable in every respect to differing factual situations.'" *Stumph v. Thomas & Skinner Inc.,* 770 F.2d 93, 96 (7th Cir.1985) (quoting *McDonnell Douglas,* 411 U.S. at 803 n. 13 [93 S.Ct. at 1824 n. 13.).] In the circumstances of this case, the replacement element is not proper, and should be dropped. "The common sense of this approach is obvious; where a person's job is eliminated, there can be no showing of replacement.... An employee nonetheless may have been terminated because of his age and therefore be entitled to relief under the ADEA." *Stumph,* at 770 F.2d 96 (in context of large scale reduction in force).

A contrary holding would lend itself to a cunning use by employers bent on avoiding the ADEA. Such an employer might create an unnecessary job description, shift a protected worker into that job, and, after a brief period, fire him. Because the job is unnecessary, there will be no replacement, and the plaintiff's *prima facie* case will always fail. Absent direct evidence of age discrimination, the victim of such a maneuver would lack a remedy under the ADEA.

In the summary judgment context, the ADEA plaintiff need only show a genuine dispute with regard to the elements of his *prima facie* case. He need not establish them as true. In this action, the plaintiff has met his *prima facie* burden. It is undisputed that plaintiff was fired, and that he was over 40 at the time. The only remaining element of the *prima facie* case, as applied, is job performance. In his affidavit in response to the motion for summary judgment, plaintiff states that by the time of his termination he "had been a loyal, trusted employee of Keyes Fibre Company for 39 years." This is some evidence supporting the performance element, even if it is self-serving. It is, in the court's view, sufficient evidence to create a genuine issue of material fact on a motion for summary judgment.

Thus, plaintiff passes the *prima facie* case barrier, and thereby transfers the burden to defendant to show a legitimate reason for firing him. This the defendants do by detailing the desk incident and arguing it presented a legitimate cause for terminating even a long-term employee like plaintiff. *See, Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir.), *cert. denied* 484 U.S. 977 [108 S.Ct. 488, 98 L.Ed.2d 486] (1987) (the discrimination laws do not second guess non-discriminatory business decisions, no matter how wrong they might seem). Accordingly, the burden shifts back to the plaintiff to show that this reason was a pretext for age discrimination.

The January 11 order did not go on to inquire whether the plaintiff had established a genuine issue of fact with regard to pretext. Rather, the court took that issue under advisement pending the close of discovery and submission of plaintiff's supplemental response. The record for summary judgment purposes is now complete, and the court turns to the merits of the pretext issue.

■ The pretext inquiry is straightforward: Has the plaintiff produced material allowing an inference that the desk incident was a pretext for age discrimination by the defendants? In making this inquiry, however, the court is conscious of an important procedural principle oft-repeated in this circuit: Summary judgment is generally inappropriate for resolving the issues of motive or intent that tend to dominate employment discrimination cases. *E.g. Stumph v. Thomas & Skinner Inc.*, 770 F.2d 93, 97 (7th Cir.1985); *Kephart v. Institute of Gas. Tech.*, 630 F.2d 1217, 1218 (7th Cir. 1980), *cert. denied* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Further, as in every summary judgment proceeding, the court will construe the record and the inferences drawn from it in the light most favorable to the non-moving party. *Bartman v. Allis Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986).

■ Turning to the substance of the pretext inquiry, there are two methods of proof. Employment discrimination plaintiffs may support an inference that their employer's excuse for termination was a pretext for age discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

Where the plaintiff relies on the indirect method by attempting to show the employer's proffered reason is incredible, the plaintiff need not present *any* direct evidence of discrimination. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409–10 (7th Cir.1984). As the Seventh Circuit has explained, a plaintiff may simply attack the credibility of the employer's proffered reason for termination:

[A] showing that a proferred justification is pretextual may itself be equivalent to a finding that the employer intentionally discriminated. In other words, if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent.

*Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 18 (7th Cir.1987), *overruled on other grounds* 860 F.2d 834 (7th Cir.1988). *See also Ayala v. Mayfair Molded Products Corp.*, 831 F.2d 1314, 1319 (7th Cir. 1987). The Supreme Court has provided similar guidance, explaining that "there may be some cases where the plaintiff's initial [*prima facie*] evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. *See also Norris v. City and County of San Francisco*, 900 F.2d 1326, 1330 (9th Cir.1990) (Title VII context; district court should have evaluated the "plausibility of each of the explanations proffered"); *Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir.1987) (Title VII context; district court should have allowed fact-finder to weigh evidence and determine whether proffered reason was "justified").

■ Affidavits and other material filed in this action establish as a genuine issue of fact the question of whether the defendants honestly believed plaintiff tried to steal a desk from Keyes Fibre. These materials show the court that the desk incident may prove so implausible at trial that a reasonable jury might find it unworthy of credence. Specifically, plaintiff's own affidavit shows the court that (1) he did not initially remove the desk, which had been his and contained his property, but came upon it in transit during the daytime, (2) he did not try to conceal his subsequent move-

ments of the desk, (3) when he moved the desk he had five hours left on duty, during which time he could have obtained a pass to drive the desk off Keyes Fibre's property, (4) he never drove the desk off Keyes Fibre's property, and (5) after the desk incident, Keyes Fibre entrusted plaintiff with weekend access to the entire plant when only a skeleton crew was on duty.[2] Robert Dare's affidavit further shows the court that (1) plaintiff could not have removed the desk without passing guards who would have questioned him about the desk, and (2) plaintiff normally parked during his shift in a place where his truck and its contents would be visible to the guards.[3] Plaintiff also shows the court a Keyes Fibre memorandum on the company's pass policy, dated December 11, 1984, which shows the plant guards were instructed to strictly enforce the pass requirement. The defendants have not contradicted any of this information with their own filings.

■ From this evidence, a reasonable jury could conclude that the desk incident was an excuse for discharge that was unworthy of credence, or "insufficient to motivate discharge." *La Montagne*, 750 F.2d at 1415. In other words, this evidence could support a reasonable jury in declining to believe that the defendants honestly thought plaintiff attempted to steal a desk. Should the jury refuse to agree with the defendants that they honestly believed he was a thief, then the jury could award ADEA relief based on the plaintiff's *prima facie* evidence alone. *Graefenhain*, 827 F.2d at 18; *See also Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. Plaintiff need not go further and produce affirmative evidence of discrimination. *La Montagne*, 750 F.2d at 1409–10. As the Supreme Court has explained in another employment discrimination context: "[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible rea-

sons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race." *Furnco Const. Co. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) (emphasis original).

Of course, the law plainly limits the court's power to review an employer's proffered reason for terminating a protected employee. The defendants have ably briefed several cases from this circuit in support of the proposition that ADEA relief is improper where the defendants honestly believe in and act on a mistaken justification for termination. For example, in *Weihaupt v. American Med. Ass'n*, 874 F.2d 419 (7th Cir.1989), the court surveyed its cases and held:

> "[W]e do 'not sit as a super-personnel department that examines an entity's business decisions.' *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). 'No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere." *Pollard v. Rea Magnet & Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987). Rather, our inquiry is limited to 'whether the employer gave an honest explanation of its behavior.' *Id.*" *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988). *See also Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1426 (7th Cir.1986).

But mistake is not the issue requiring a trial here. The issue for trial is honest belief.[4] If the court could determine that defendants honestly believed plaintiff was a thief, then the defendants would be entitled to summary judgment. On this record, however, it is for the jury to determine the defendants' true motive by deciding whether the proffered justification is

---

**2.** The court is satisfied that all of this material from plaintiff's affidavit is rooted in personal knowledge as required by Federal Rule of Civil Procedure 56(e).

**3.** The court is satisfied that all of this material from Robert Dare's affidavit is rooted in personal knowledge as required by Federal Rule of Civil Procedure 56(e).

**4.** The defendants argue repeatedly that the defendants honest belief in their proffered reason for discharging plaintiff is uncontested. The court disagrees, finding this dispute to be the plain import of plaintiff's filings, which consistently attempt to show that the desk incident is an incredible explanation for plaintiff's termination.

credible. In this action, the court cannot say, as a matter of law, what the defendants really believed when they fired plaintiff. *E.g. Stumph*, 770 F.2d at 97 (summary judgment generally inappropriate); *Graefenhain*, 827 F.2d at 18 (plaintiff may reach jury by attacking credibility of proffered reason for termination).

Accordingly, there is a genuine issue in this case as to whether the defendants honestly believed the plaintiff was a thief. A genuine issue of material fact, therefore, exists as to plaintiff's ADEA claim, and he may present it to the jury.[5]

### III. DEFAMATION

■■■ As with plaintiff's ADEA claim, the court's January 11 order nearly completes the analysis of his defamation claim.

Plaintiff claims Keyes Fibre and its agents defamed him by telling Indiana unemployment officials that he had been fired for attempting to steal company property. Plaintiff asserts, and defendants agree, that agents of Keyes Fibre detailed the desk incident in unemployment proceedings, stating the company's conclusion that plaintiff had attempted to steal the desk.

In *Ernst v. Indiana Bell Telephone Co.*, 475 N.E.2d 351 (Ind.App.1985), the court explained that employers hold a privilege from defamation actions with regard to their statements to unemployment benefits agencies inquiring into the facts of an employee's termination. The privilege, explained the court, is either absolute or qualified. It may be absolute, on a theory that the employee's decision to seek benefits is a consent to the inquiry and the statements it produces. Alternatively, it may be qualified, subject to waiver if "the speaker was motivated primarily by ill will toward the plaintiff, the privilege was

abused by excessive publication of the defamatory statement, or the statement was made without belief or grounds for belief in its truth...." *Id.*, 475 N.E.2d at 355–56.

*Ernst* may represent a new development in Indiana law to the extent it proposes an absolute privilege. However, prior decisions held the privilege qualified. *E.g., Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172, 1175 (Ind.App.1983); *Sanders v. Stewart*, [157 Ind.App. 74] 298 N.E.2d 509, 511–12 (1973). A statute establishing the privilege also seems to make it qualified. Indiana Code § 22–4–17–9 states in part: "Any testimony or evidence submitted in due course before the [unemployment] board, review board, an administrative law judge, or any duly authorized representative of any of them shall be deemed a communication *presumptively* privileged with respect to any civil action...." (emphasis added). One wonders why the legislature made the privilege merely "presumptive" if they meant it to be absolute. And, finally, the *Ernst* court was careful to show that the case before it came to the same result whether the privilege was qualified or absolute. In light of the prior Indiana decisions, the statute, and the *Ernst* court's caution, this court declines to adopt the absolute privilege rule advanced by *Ernst*. Rather, in prudence, the court applies the long-standing qualified privilege rule.

The plaintiff's filings in response to defendants' motion cite no law, merely recounting the undisputed publication in the unemployment proceedings. The defendants have established that a qualified privilege applies, and the burden is, therefore, on plaintiff to show they lost it. *Knight v. Baker*, [173 Ind.App. 314]

---

**5.** The defendants have filed two collateral motions relevant to the plaintiff's affidavits in response to their motion for summary judgment: on December 26, 1990, defendants filed their "motion to Strike Portions of Plaintiff's Affidavit," and on January 25, 1991, defendants filed their "Motion to Strike Affidavits Attached to Plaintiff's Supplemental Response on Summary

Judgment." These motions urge the court, in these summary judgment proceedings, to ignore portions of plaintiff's affidavit, Robert Dare's affidavit, and other filings. In the preceding analysis and conclusions, the court has relied on nothing to which the defendants objected. Accordingly, the motions are now MOOT.

363 N.E.2d 1048, 1051 (1977). Plaintiff has made no explicit attempt to show that the defendants' publication in the unemployment proceedings was motivated by ill-will, such that the court could infer a genuine dispute over the factual issue of bad faith. However, plaintiff's ADEA claim remains at issue for the time being. While there is a possibility that plaintiff will establish the desk incident was a pretext for age discrimination, the court cannot conclude there is no genuine issue of bad faith in the defendants' publication of a statement that they fired plaintiff for dishonesty.

The court declined to rule on the summary judgment motion as to plaintiff's defamation claim pending resolution of the ADEA claim. For reasons discussed above, the plaintiff's ADEA claim remains pending. Accordingly, the plaintiff may yet establish that the defendants fired him because of his age, not because of any honestly held belief that he committed an act of dishonesty. If the defendants fired plaintiff because of his age, rather than any honest belief that plaintiff was dishonest, then their publication of the desk incident as an excuse for his termination may well have been an act of bad faith. Therefore, a genuine issue of material fact exists as to plaintiff's defamation claim, and he may present it to the jury.

## IV. CONCLUSION

Summary judgment being inappropriate, this case shall proceed to trial on plaintiff's ADEA and defamation claims.

IT IS SO ORDERED.