996 F.2d 1220
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Howard ZALLER and Dorothy Zaller, Plaintiffs-Appellants,
v.
LYKOWSKI CONSTRUCTION, INC., Defendant-Appellee.
 No. 92-3463.
 United States Court of Appeals, Seventh Circuit.
 Argued May 12, 1993.
Decided June 14, 1993.
 
 1
 Before FLAUM and RIPPLE, Circuit Judges, and HUBERT L. WILL, Senior District Judge*.
 
 ORDER
 
 2
 Howard and Dorothy Zaller brought this diversity action seeking damages and injunctive relief against a construction company with whom they contracted for improvements on and movement of their residence. A jury found for the construction company. The Zallers appeal on the grounds that the district court erred in (1) refusing to grant a directed verdict in their favor because (a) they proved the construction company breached the contract, and (b) the jury rested its verdict on implausible testimony of defense witnesses; (2) precluding the admission of an exhibit in evidence; and (3) ordering foreclosure of a mechanic's lien against their property and awarding attorney's fees to the construction company. We affirm because none of these grounds constituted error.
 
 I. FACTS
 
 3
 In August 1989, the Zallers purchased a house in Elkhart, Indiana, with the intention of removing it to another site they owned in Elkhart. Around Labor Day, the Zallers entered into a contract with Lykowski Construction, Inc. ("Lykowski"), a corporation engaged in moving primarily residential structures. Lykowski agreed to move the house and raise it to a height sufficient to allow room for the construction of a standard basement for a price of $8,400. Two weeks later, the Zallers entered into a separate contract with Dennis Amos providing for the construction of a foundation for the house consisting of walls, a concrete floor and other necessary elements for a price of $9,128.
 
 
 4
 Lykowski brought the house to the Zallers' site, and Amos built the foundation. When Lykowski sought to lower the house onto the foundation, the Zallers requested Lykowski to raise the house four additional feet. They insisted that the house could not be lowered onto the foundation because Amos built defective walls and that Lykowski was responsible for the defects in Amos's work. The Zallers asserted that the alteration and deviation clause of the contract required Lykowski to raise the house. That clause read:
 
 
 5
 Any alteration or deviation from the specifications herein agreed upon, involving the extra cost of labor and material, will be executed upon written order for same and will become an extra charge over the sums mentioned in this contract. Structure at destination will be raised to allow for construction of 7'4 (standard) or 8' basement. Heights in excess of these measurements will constitute additional charges of $150 per hour.
 
 
 6
 Lykowski disagreed with the Zallers' assertions that it was responsible for Amos's work and that the clause applied. The Zallers refused to pay the balance of the monies due in their contracts with Lykowski and Amos.
 
 
 7
 In September 1990, the Zallers filed the instant action alleging that Lykowski and Amos breached their contracts with the Zallers and performed their work in an unworkmanlike manner. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. The first five counts of the complaint requested relief against Lykowski: count I alleged breach of contract and sought $45,000 for damages to the house and its contents during the move, inability to use the structure, and increased costs of completing the project; count II alleged breach of a duty of care and sought $10,000 for damages to the house and increased construction and design costs; count III sought relief of $10,000 in ordinary damages for the costs of completing the contract, and $150,000 in punitive damages, alleging that the breach of contract was malicious and in bad faith; count IV sought injunctive relief; and count V sought relief of $50,000 in ordinary damages based on a theory of conversion and $150,000 in punitive damages. The last three counts of the complaint, which sought relief against Amos, were dismissed for lack of subject matter jurisdiction.
 
 
 8
 Lykowski denied breaching the contract and performing in an unworkmanlike manner. It contended that the Zallers breached the contract and counterclaimed for $9,475 in delay damages, $1,000 as the balance due on the contract, and an award of attorney's fees.
 
 
 9
 In June 1992, the case was tried before a jury. After eight days, the jury returned a verdict for Lykowski in the amount of $1,000. The Zallers filed a motion for judgment notwithstanding the verdict or for a new trial, pursuant to Fed.R.Civ.P. 50, which the district court denied. This appeal followed.
 
 II. DISCUSSION
 
 10
 A. Sufficiency of Evidence to Support Jury's Verdict
 
 
 11
 The Zallers contend that the district court erred in denying their motion for a directed verdict because they proved "beyond a preponderance of the evidence" that Lykowski breached the contract by failing to undertake the alterations and deviations requested by them to complete the building project. In diversity cases, state law governs the standard for reviewing the denial of a motion for a directed verdict. Deimer v. Cincinnati Sub-Zero Products, Inc., No. 92-1030, slip op. at 3-4 (7th Cir. Apr. 6, 1993). Under Indiana law, an appellate court reviews a trial court's grant of a motion for a directed verdict after considering the evidence and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. See Knight v. Baker, 363 N.E.2d 1048, 1050 (Ind.App.1977). A directed verdict should be granted only where there is no evidence or legitimate inferences in favor of the nonmovant, or where there is no conflict over the evidence and all possible inferences favor the movant. Id. The evidence need not be convincing or uncontradicted, but there must be some evidence or inference supporting the nonmovant on the issue. See Strong v. Commercial Carpet Co., Inc., 322 N.E.2d 387, 391 (Ind.App.1975).
 
 
 12
 Applying this standard here, the district court properly denied the Zallers' motion for a directed verdict. The jury heard conflicting stories about whether Lykowski agreed to be responsible for Amos's work and whether the problems with the building project were caused by the Zallers' own action or inaction. Because of these conflicts, a directed verdict would have been inappropriate. The evidence was sufficiently ambiguous and controverted to demand resolution by the jury.
 
 B. Credibility Determinations
 
 13
 The Zallers contend that the district court erred in denying their motion for a directed verdict because the testimony of Tim Lykowski, president and sole shareholder of Lykowski Construction, Inc., concerning the date the contract was signed, the contract terms, and the November 5, 1989, meeting was so contrary to the physical facts and documentary evidence that a reasonable factfinder would not credit it. Appellate review of credibility determinations is extremely limited. Taylor v. Western & Southern Life Ins. Co., 966 F.2d 1188, 1197 (7th Cir.1992). Under Indiana's "physical facts" rule, "where a court cannot say as a matter of law that the testimony of a witness is contrary to scientific principles, the law of nature or the physical facts, the question of whether such testimony does so conflict is a question for the jury to determine." Spesco, Inc. v. General Elec. Co., 719 F.2d 233, 237 (7th Cir.1983) (quoting Connor v. Jones, 59 N.E.2d 577, 581 (Ind.App.1945)). See also Zollman v. Symington Wayne Corp., 438 F.2d 28, 31-32 (7th Cir.), cert. denied, 404 U.S. 827 (1971).
 
 
 14
 The Zallers failed to establish that Tim Lykowski's testimony was contrary to any scientific principle, law of nature, or physical fact. As Lykowski pointed out in its brief, conflicts about whether the contract was signed on August 31, 1989, or September 2, 1989; whether Howard Zaller was in Elkart, Indiana, or Cleveland, Ohio, on August 31, 1989; whether Tim Lykowski was present at the November 5, 1989, meeting between Amos and Howard Zaller; whether Amos was involved in the project on September 1, 1989; and whether Tim Lykowski received two items of correspondence sent to him from the Zallers and their lawyer, were within the province of the jury to resolve. See Spesco, 719 F.2d at 237; Zollman, 438 F.2d at 32. Application of the "physical facts" rule was thus inappropriate.
 
 C. Exclusion of Exhibit 55
 
 15
 The Zallers contend that the district court erred by excluding in evidence Exhibit 55, identified as a contract drafted by Amos and dated September 1, 1989, because the document showed an agency relationship between Lykowski and Amos. The district court has wide discretion in deciding whether to exclude evidence. Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1307 (7th Cir.1987), cert. denied, 492 U.S. 917 (1989). This includes a determination of whether the parties should be held to pretrial orders. Sadowski v. Bombardier, Ltd., 539 F.2d 615, 620 (7th Cir.1976).
 
 
 16
 The Zallers produced Exhibit 55 on the last day of the trial. The exhibit was not disclosed to opposing counsel and made known to the district court, nor was leave of court obtained prior to its use, as required by the pretrial order. In these circumstances, the district court acted within its discretion in determining that the admission of Exhibit 55 would unduly delay proceedings, and that such delay outweighed its relevance. See Liquid Air Corp., 834 F.2d at 1307-08.
 
 D. Imposition of Mechanic's Lien
 
 17
 The Zallers contend that Lykowski acted in bad faith by filing a mechanic's lien against their realty because the amount claimed, $11,000, was in excess of the contract price and eleven times the amount awarded by the jury. As a result, Lykowski should be estopped from enforcing the lien. The district court rejected the Zallers' contention. The issue was addressed at two points by the district court:
 
 
 18
 The court recognizes that a lack of attention to this issue could create a substantial injustice, such as if a laborer with a certain claim for $100.00 asserted a lien for $50,000.00; under such circumstances, an owner willing to pay the $100.00 should not be placed in a hopeless situation of being required to pay for the laborer's unsuccessful efforts to win something more.
 
 
 19
 That is not this case, however. The "excess" claim involved here was not frivolous, and the Zallers never expressed a willingness simply to pay the $1,000.00 due under the contract; instead, they insisted on bringing this suit for hundreds of thousands of dollars. The Zallers' position made eight days of trial and concomitant trial preparation necessary for Lykowski to establish its right to the contract balance, small though it was in comparison to the litigation expense.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 By its verdict, the jury necessarily found that (a) Lykowksi did not breach the contract, (b) Lykowski had completed its work under the contract, and (c) Lykowski was entitled to be paid the balance of the contract price, or $1,000.00. The jury also necessarily rejected Lykowski's claim for liquidated delay damages, but the verdict leaves no room for the proposition that Lykowski wrongfully denied the Zallers of their rightful use and enjoyment of the property for an extended period of time. Lykowski performed the contract.
 
 
 23
 For an estoppel to exist under Indiana law, the lienholder must have induced the adverse party to rely upon the purported lienholder's words or conduct to the adverse party's detriment. State ex rel. Crooke v. Lugar, 171 Ind.App. 60, 354 N.E.2d 755 (1976); Sheraton Corp. of America v. Kingsford Packing Co., Inc., 162 Ind.App. 470, 319 N.E.2d 852 (1974). The Zallers have not suggested any inducement by Lykowski or reliance by the Zallers, and none is imaginable. If anything, the inflated claim in Lykowski's statement worked to the detriment of Lykowski, which faced a burden of proving an additional claim of damages at trial.
 
 
 24
 At bottom, the Zallers' argument consists simply of the assertion that a laborer who proves some, but not all, of the amount claimed is not entitled to a mechanic's lien. The Zallers cite no Indiana authority for such a proposition, and the court has found none. Lykowski proved itself entitled to a lien against the property in the amount $1,000; Lykowski is entitled to enforcement of that lien.
 
 
 25
 Memorandum and Order dated September 2, 1992, at 8-9, 11-12. We agree with the reasoning of the district court and therefore conclude that the lien was valid.
 
 
 26
 The Zallers also attack the award of $26,695 in attorney's fees for Lykowski. Ind.Code Ann. § 32-8-3-14 provides that "[i]n all suits for the enforcement of any lien under the provisions of this chapter, if the plaintiff or lienholder shall recover judgment in any sum, he shall also be entitled to recover reasonable attorney's fees, which shall be entered by the court trying the same, as a part of the judgment in said suit." Attorney's fees are authorized as part of the in rem judgment and are paid from the proceeds of the sale of the realty. Potter v. Cline, 316 N.E.2d 422, 431 (Ind.App.1974).
 
 
 27
 The Zallers acknowledge that attorney's fees are recoverable for enforcing a mechanic's lien, but rather contend that recovery in this case was improper because the lien was invalid. Lykowski, however, met its burden of proving the validity of the lien. Lykowski accordingly was entitled to attorney's fees as part of the in rem judgment against the Zallers' property.
 
 III. CONCLUSION
 
 28
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation